UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRANDON RODRIGUEZ,

     Plaintiff,

v.                                                    Case No.:  2:23-cv-1102-SPC-DNF

KEVIN RAMBOSK, *et al.*,

     Defendants.

_____

**OPINION AND ORDER**

Before the Court are two summary judgment motions: one filed by Defendants David B. Drucks, Blaine T. Barbuto, Matthew Perez, Michael Chapman, and Delianys Morera (collectively, "Deputies") (Doc. 92), and another by Sheriff Kevin Rambosk (Doc. 93).  Plaintiff Brandon Rodriguez responded to each motion (Docs. 101, 102), and Defendants[1] replied (Docs. 106, 107).  For the reasons below, the Court grants both motions.

**Background**

This civil rights case arises from an arrest that occurred late at night outside a crowded bar.  The parties offer conflicting accounts of the events.  However, video footage clarifies much of the incident.  Below is a brief

---

[1] The Deputies and Sheriff Rambosk are collectively referred to as "Defendants."

background based on undisputed facts and indisputable video footage.[2]  Any pertinent factual disputes are detailed within each claim.

On the evening of November 28, 2020, Plaintiff, his brother Vincent Rodriguez ("Vincent"), and their friend Michael Dimaria visited Cavo Lounge, a bar in a Naples shopping plaza called Mercato.  Dimaria was inebriated and, after roughly ten to fifteen minutes, was kicked out of the bar.  Outside Cavo, multiple deputies from the Collier County Sheriff's Office issued Dimaria a trespass warning.  Vincent exited the bar, located Dimaria and the deputies, and questioned the deputies about the basis for the trespass warning.  After a brief kerfuffle, the deputies arrested Vincent and escorted him to the parking garage where their vehicle was parked.[3]  (Ex. 8 at 00:55–03:40).[4]

Enter Plaintiff.  As the deputies approached their vehicle with Vincent in handcuffs, Plaintiff ran up behind them with his cellphone, recording the arrest.  Deputy Barbuto chased Plaintiff.  When Plaintiff approached Vincent and the deputies, he asked why his brother was being arrested.  (Ex. 10 at

---

[2] Although Plaintiff offers an opposing view, the Court disregards his version when it is clearly contradicted by the video. *See Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)) ("Where the video obviously contradicts Plaintiff's version of the facts, we accept the video's depiction instead of Plaintiff's account.").

[3] Vincent's arrest is the subject of a separate pending lawsuit.  *See Rodriguez v. Rambosk, et al.* Case No. 2:23-cv-1103-SPC-DNF (M.D. Fla).

[4] Exhibit 8 is a video compilation of multiple surveillance camera angles: Mercato just outside Cavo, an alley leading to the parking garage, and the parking garage.

00:01–00:10).[5]  Deputy Barbuto grabbed Plaintiff's left wrist and turned him away from Vincent and the arresting deputies.  Plaintiff pulled his hand out of Deputy Barbuto's grasp and then put his hands in the air.  Deputy Barbuto then placed his hand on Plaintiff's chest to push him back, away from the scene.  Plaintiff then slapped Deputy Barbuto's hand away from his chest.  (Ex. 8 at 03:40–03:47).  All the while, Plaintiff was yelling at Deputy Barbuto, although his words are indiscernible because his speech was slurred.  (Ex. 10 at 00:10–00:17).

After Plaintiff slapped Deputy Barbuto's hand, Lieutenant Drucks (who had just arrived on the scene with Deputy Chapman) pushed Plaintiff from behind.  (Ex. 8 at 03:47–03:48).  Deputy Chapman then grabbed Plaintiff around the neck and attempted to take him to the ground.  Although Deputy Chapman went to the ground, Plaintiff did not; he remained on his feet but in a hunched position.  (*Id.* at 03:48–03:52).  Deputy Barbuto and Lieutenant Drucks jumped in to help bring Plaintiff down.  Their combined efforts overcame Plaintiff's resistance, and they brought Plaintiff to the ground.  (*Id.* at 03:52–03:55).  Deputy Barbuto and Lieutenant Drucks then held Plaintiff down as they attempted to handcuff him.  Deputy Chapman was stuck at the bottom of the pile.  But once he escaped, he helped hold Plaintiff down.  Deputy

---

[5] Exhibit 10 is the recording from Plaintiff's cellphone.

Perez, who up to this point was aiding with Vincent's arrest, also came over to help restrain Plaintiff. Once Plaintiff was handcuffed, the Deputies placed Plaintiff in a sitting position. (*Id.* at 03:55–05:11). About thirty seconds later, they lifted Plaintiff off the ground and escorted him around a corner and out of camera-shot.[6] (*Id.* at 05:37–05:50).

Plaintiff was ultimately charged with battery on a law enforcement officer in violation of Florida Statute § 784.07, disorderly conduct in violation of § 877.03, resisting an officer with violence in violation of § 843.01, and obstruction of an officer without violence in violation of § 843.02. (Doc. 92-12). He entered into a deferred prosecution agreement with the State Attorney's office. (Doc. 92-13). Upon completion of the agreement's requirements, the charges were dismissed. (*Id.*).

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine

---

[6] What transpired after Plaintiff was taken off-camera is disputed. Plaintiff claims he was subject to excessive and unnecessary force. Defendants dispute this account. Given the absence of video, the parties agree a factual dispute exists over what occurred off-camera. So Defendants' motions do not dispose of the entire case, and the Court construes them as motions for *partial* summary judgment.

dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show a lack of genuinely disputed material fact. *Clark v. Coats & Clark,* 929 F.2d 604, 608 (11th Cir. 1991). If carried, the burden shifts to the nonmoving party to point out a genuine dispute. *Id.* At this stage, a court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir. 2002). That said, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

## Analysis

Plaintiff brings claims against the Deputies in their individual capacities for false arrest and false imprisonment under 42 U.S.C. § 1983 and Florida law (counts I–IV), battery and assault under Florida law (counts V and VI), excessive force under § 1983 (count VII), malicious prosecution under § 1983 and Florida law (counts VIII and IX), and failure to intervene under § 1983 (count XII).

As for Sheriff Rambosk, Plaintiff brings two § 1983 official-capacity claims under *Monell v. Department of Social Services of City of New York*, 436

U.S. 658 (1978) (counts X and XI), as well as claims for negligent training and supervision under Florida law (counts XIII and XIV). Plaintiff also brings vicarious liability claims against Sheriff Rambosk for false arrest, false imprisonment, battery, and assault (counts I, II, V, and VI).[7]

At the outset, the Court notes Plaintiff abandoned several of his claims. Defendants seek summary judgment on Plaintiff's claims for malicious prosecution (counts VIII and IX), *Monell* (counts X and XI), and negligent supervision and training (counts XIII and XIV). Plaintiff never addressed these claims in his response. So they are deemed abandoned, and the Court grants summary judgment on such claims. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (explaining that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); *McIntyre v. Eckerd Corp.*, 251 F. App'x 621, 626 (11th Cir. 2007) (finding no error in the district court's conclusion that the plaintiff abandoned her battery claim by making no argument in response to the defendant's summary-judgment motion on such claim). As for the rest, the Court first tackles the § 1983 claims followed by the various state law claims.

---

[7] Plaintiff improperly alleged these vicarious liability claims in the same count as his direct claims against the Deputies. *See Smith v. Carnival Corp. & PLC*, No. 22-CV-22853, 2022 WL 16791783, at *3 (S.D. Fla. Nov. 8, 2022) (finding a count that comingled theories of vicarious and direct liability constituted the third type of shotgun pleading). But Defendants never moved to dismiss the claims on this basis, and they do not address the issue in their summary judgment briefing. So the Court disregards this defect.

## I.  Section 1983 Claims

The Court addresses Plaintiff's false arrest, excessive force, and failure to intervene claims in turn.  But because the Deputies raise a qualified immunity defense, the Court first outlines that standard.

### A.  Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When a defendant officer operated within the scope of his discretionary authority, the plaintiff bears the burden of "demonstrat[ing] that qualified immunity is not appropriate." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting *Lumley v. City of Dade City*, 327 F.3d 1186, 1194 (11th Cir. 2003)).

The parties do not dispute that the Deputies acted within the scope of their discretionary authority.  So Plaintiff bears the burden of proving "both (1) that the officers 'violated a statutory or constitutional right' and (2) 'that the right was clearly established at the time of the challenged conduct.'" *Acosta v. Miami-Dade Cnty.*, 97 F.4th 1233, 1239 (11th Cir. 2024) (quoting *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017)).

### B.    False Arrest under § 1983 (count III)

Plaintiff sues the Deputies in their individual capacities, claiming they violated his Fourth and Fourteenth Amendment rights by arresting him without a valid warrant, consent, or probable cause. (Doc. 63 ¶¶ 92–97). The Deputies argue they had actual probable cause to arrest Plaintiff for obstruction without violence under Fla. Stat. § 843.02 and battery on a law enforcement officer under § 784.07. Alternatively, they argue they are entitled to qualified immunity because they had arguable probable cause for the arrest. Plaintiff responds that factual disputes exist as to whether the Deputies had probable cause (actual or arguable) and, thus, qualified immunity and summary judgment are improper.

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citation omitted). "Actual probable cause exists when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Davis v. City of Apopka*, 356 F. Supp. 3d 1366, 1375 (M.D. Fla. 2018) (citations omitted) (cleaned up), *aff'd*, 78

F.4th 1326 (11th Cir. 2023). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

An officer who makes an arrest or detention without actual probable cause is nonetheless entitled to qualified immunity in a § 1983 action if there was "arguable probable cause" for the arrest. *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006); *see also Brown*, 608 F.3d at 734 ("To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause."). "The standard for arguable probable cause is whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) (quotations omitted). Qualified immunity allows ample room for mistaken judgments to prevent officials from erring on the side of caution due to a fear of litigation. *Id.* at 1446. A court looks to the totality of the circumstances to determine whether arguable probable cause exists. *Davis*, 451 F.3d at 763.

A plaintiff has the burden of establishing the absence of probable cause to succeed on a § 1983 claim. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998). To do so, he must show that no reasonably objective police officer would have perceived there to be probable cause based on the totality of the

circumstances. *Coffin v. Brandau*, 642 F.3d 999, 1006 (11th Cir. 2011). The existence of probable cause "constitutes an absolute bar" to a § 1983 claim for false arrest. *Rankin*, 133 F.3d at 1435.

With the standard established, the Court addresses whether the Deputies had probable cause to arrest Plaintiff for battery on a law enforcement officer. The Deputies argue Plaintiff slapped Deputy Barbuto's arm, which constituted probable cause for the arrest. Plaintiff argues he never made physical contact with Deputy Barbuto. However, the video footage is dispositive. As detailed above, the surveillance footage shows when Deputy Barbuto placed his hand on Plaintiff's chest, Plaintiff slapped it away. This contact provided actual probable cause for the arrest.

Under Florida law, a person commits a battery on a law enforcement officer if he (1) intentionally touched or struck the victim or intentionally caused bodily harm to the victim; (2) the victim was a law enforcement officer; (3) the defendant knew that the victim was a law enforcement officer; and (4) the law enforcement officer was engaged in the lawful performance of his or her duties when the battery was committed. *State v. Granner*, 661 So. 2d 89, 90 (Fla. Dist. Ct. App. 1995). Critical here, the touching element of this offense can be satisfied "by any physical contact, no matter how slight," *United States v. Vail-Bailon*, 868 F.3d 1293, 1298 (11th Cir. 2017), including "only nominal

contact" such as "tapping a law enforcement officer on the shoulder without consent," *State v. Hearns*, 961 So. 2d 211, 219 (Fla. 2007).

Plaintiff slapped Deputy Barbuto's hand.  It is undisputed Plaintiff knew Deputy Barbuto was a uniformed law enforcement officer who was engaged in the lawful performance of his duties.  From the perspective of an objectively reasonable officer, Plaintiff's conduct established actual probable cause (or at a minimum, arguable probable cause) to arrest him for the offense of battery on a law enforcement officer.  *See Pinto v. Collier Cnty.*, No. 21-13064, 2022 WL 2289171, at *4 (11th Cir. June 24, 2022) (finding the plaintiff extending his right arm and placing it on the officer's chest constituted probable cause to arrest the plaintiff for battery on a law enforcement officer).

In his deposition, Plaintiff asserted that to the extent he physically touched Deputy Barbuto, he was merely trying to regain his balance.  (Doc. 92-5 at 49:15–19).  But in *Pinto*, the Eleventh Circuit rejected the same argument. There, the plaintiff claimed the officer pushed him from behind causing him to stumble forward.  *Pinto*, 2022 WL 2289171, at *1.  As a result, he extended his right arm to maintain his balance but, in doing so, touched the officer's chest with his right hand.  *Id.*  Despite his purported attempt to gain balance, the Eleventh Circuit explained "the existence of probable cause turns on neither [the plaintiff's] actual intent nor his subjective impression of the nature of his contact with [the officer]."  *Id.*  And it concluded that a reasonable officer could

view this slight contact "as creating a substantial chance of criminal activity." *Id.* at \*4. Such is the case here.

Because the Deputies had actual probable cause to arrest Plaintiff for battery on a law enforcement officer, the Court need not address whether probable cause existed to arrest him for obstruction without violence. *See Benoit v. City of Lake City, Fla.*, 343 F. Supp. 3d 1219, 1235 (M.D. Fla. 2018) ("[S]o long as probable cause existed to arrest [the plaintiff] for any offense, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges."). The Deputies are thus entitled to qualified immunity because Plaintiff failed to show a constitutional violation, and the Court grants summary judgment in the Deputies' favor on count III.

### C.    False Imprisonment (count IV)

Plaintiff brings a false imprisonment claim against the Deputies under § 1983. Because the Deputies had actual probable cause to arrest Plaintiff, the Court grants summary judgment in their favor on the false imprisonment claim as well. *See Cruz v. Green*, 352 F. Supp. 3d 1213, 1225 (S.D. Fla. 2019) (explaining false imprisonment claims under § 1983 "fail if there was probable cause for a plaintiff's arrest").

### D.    Excessive Force (count VII)

Plaintiff's excessive force claim arises from two incidents. The first is the force used to initiate his arrest. The Deputies seek summary judgment on

this incident. The second purportedly occurred after Plaintiff was arrested and escorted out of the view of any camera. Without any video footage, the Deputies concede a factual dispute exists over what occurred. So the Court addresses only the first incident and grants only partial summary judgment on this count.

Plaintiff advances two theories to support his excessive force claim. He first argues that no probable cause existed for his arrest, so *any* use of force was excessive. (Doc. 101 at 18). The Eleventh Circuit has characterized such a claim as an "artificial" excessive force claim. *See Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022) (explaining that an artificial excessive force claim asserts "that an officer's use of force is excessive only because an arrest is not supported by probable cause"). But the Deputies had probable cause to arrest him, so this theory fails.

Plaintiff also brings a "genuine" excessive force claim, which is "a claim that—irrespective of an officer's probable cause to make an arrest—the officer used excessive force." *Id.* Although Plaintiff details in his response *why* the force used against him was unnecessary and unjustified, he fails to identify *what* force he believes was excessive. On this basis alone, he fails to demonstrate a violation of a clearly established constitutional right sufficient to overcome the Deputies' qualified immunity. A review of the surveillance footage confirms that no excessive force occurred.

When "the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. An officer's use of force, however, violates the Fourth Amendment when it is objectively unreasonable under the facts and circumstances of a specific case, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Determining whether the force used to effect a seizure was objectively reasonable requires case-by-case "balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)); *see also Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017) (same).

However, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003). While "less force is appropriate for a less serious offense," the Eleventh Circuit has made clear that "some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged

14

offense[.]" *Bass v. Jones*, No. 25-10261, 2025 WL 1529315, at *3 (11th Cir. May 29, 2025) (citations omitted).  Simply because the force may have been unnecessary does not render it excessive if the actual force used and injury inflicted were both minor in nature.  *See Graham*, 490 U.S. at 397 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."); *Croom v. Balkwill*, 645 F.3d 1240, 1252 (11th Cir. 2011) (finding no constitutional violation because "[e]ven if unnecessary, the force used against Croom was de minimus").  In other words, a minimal amount of force and injury will not defeat an officer's qualified immunity in an excessive force case.  *See Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) (explaining a minimal amount of force and injury will not defeat an officer's qualified immunity in an excessive force case).

The Court finds all force used by the Deputies was de minimis or otherwise reasonable.  Lieutenant Drucks pushed Plaintiff from behind. Plaintiff stumbled forward only a few feet, he made no contact with the ground or any other surface, and he presents no evidence of any injury resulting from the shove.  So Lieutenant Drucks' use of force was de minimis.  *See McCall v. Crosthwait*, 336 F. App'x 871, 872–73 (11th Cir. 2009) ("[A] push or shove that causes pain and necessitates no or merely minor medical treatment is not a violation of the Fourth Amendment[.]"); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (finding an officer who pushed a plaintiff against a

15

wall and placed her in a choke-hold before placing her in handcuffs was not excessive force despite the fact that the plaintiff did not resist).

The Court next considers Deputy Chapman's attempted takedown. After Lieutenant Drucks pushed Plaintiff, Deputy Chapman wrapped his arms around Plaintiff's neck and tried unsuccessfully to bring him to the ground; Plaintiff remained on his feet but in a hunched position. Plaintiff produces no evidence of any injury. Such force was de minimis. *See Alexandre v. Ortiz*, 789 F. App'x 169, 175 (11th Cir. 2019) (finding an officer who, with no warning, grabbed the plaintiff in a headlock around the neck and pulled him down (then several other officers converged to help with the takedown) used only de minimis force).

Even if Deputy Chapman's attempted takedown was not de minimis, it was reasonable under the circumstances. Plaintiff was arrested outside a bar and was slurring his words. An officer could reasonably believe Plaintiff was intoxicated. Plaintiff had just battered a law enforcement officer, so he could reasonably be viewed as a threat. And the scene was tense as deputies struggled to place Plaintiff's brother into the police cruiser only feet away. Given this situation, Deputy Chapman's attempted takedown was reasonable. *See Charles v. Johnson*, 18 F.4th 686, 700 (11th Cir. 2021) (finding tackle was reasonable given the tense situation at the time of the arrest).

16

Because Deputy Champman's takedown alone did not subdue Plaintiff, Deputy Barbuto and Lieutenant Drucks converged to help bring Plaintiff to the ground. Plaintiff resisted their efforts. Once on the ground, they held him down (with the help of Deputy Perez who joined the fray and Deputy Chapman once he escaped the pile) until they handcuffed him. The Deputies then sat Plaintiff up and escorted him away. Plaintiff was on the ground for less than two minutes. The force used was de minimis. *See Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (holding a deputy sheriff who "grabbed [the plaintiff] by the arm, forced him to the ground, placed him in handcuffs" and "held [him] to the ground for less than one minute before he helped [him] to his feet" used de minimis force); *Croom*, 645 F.3d at 1252 (finding deputy sheriff who forced the plaintiff to the ground from a squatting position and held her there with a foot (or knee) in the back for up to ten minutes used only de minimis force).

Because the force used by Deputies Chapman, Barbuto, and Perez and Lieutenant Drucks was de minimis, they are entitled to qualified immunity. *See Nolin*, 207 F.3d at 1258 ("[A] minimal amount of force and injury, as present in the facts of this case, will not defeat an officer's qualified immunity in an excessive force case.").

As for Deputy Morera, Plaintiff identifies no force used by her, and the video does not show her using any force. So she is entitled to summary

17

judgment on this count.  *See Edwards v. Monmany*, No. 2:19-CV-711-SPC-NPM, 2022 WL 159612, at \*2 (M.D. Fla. Jan. 18, 2022) (finding officer entitled to qualified immunity when there was "no indication (or even argument) for how [the officer] could be liable for excessive force without applying any force"); *Christie ex rel. estate of Christie v. Scott*, 923 F. Supp. 2d 1308, 1328 (M.D. Fla. 2013) (granting summary judgment for two officers because there was no evidence that either "participated in or even ratified the conduct that constitutes excessive force in this case").

One more point.  Even assuming Plaintiff established a constitutional violation—which he has not—he "does not cite any binding authority that supports that at the time of the incident it was clearly established that the amount of force employed by the officers violated the Constitution." *Jarvis v. City of Daytona Beach*, 754 F. Supp. 3d 1197, 1227 (M.D. Fla. 2024), *aff'd sub nom.* No. 24-13456, 2026 WL 323259 (11th Cir. Feb. 6, 2026).  So the Deputies are entitled to qualified immunity on Plaintiff's excessive force claim, and the Court grants partial summary judgment in the Deputies' favor on count VII.

### E.    Failure to Intervene (count XII)

Plaintiff brings a failure to intervene claim under § 1983 against the Deputies.  He argues that each deputy could have stopped the excessive force but failed to do so.  (Doc. 101 at 25).  But "the duty to intervene only arises when another officer uses excessive force." *Hall v. McGhee*, 762 F. App'x 837,

840 (11th Cir. 2019) (citing *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000)). Because the Deputies did not violate Plaintiff's right to be free from excessive force, no one had an obligation to intervene. *See Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009) ("[B]ecause Lister did not violate Crenshaw's right to be free from excessive force, Merritt had no attendant obligation to intervene."). So the Court grants partial summary judgment in the Deputies' favor on count XII.[8]

## II.    State Law Claims

### A.    False Arrest (count I)

Plaintiff brings a false arrest claim under Florida law against the Deputies and vicariously against Sheriff Rambosk. A false arrest claim under Florida law is substantially the same as one under § 1983. *Lopez v. City of Opa-Locka*, 788 F. Supp. 3d 1223, 1250 (S.D. Fla. 2025). "An officer may claim she had 'probable cause' to arrest as an affirmative defense to a Florida-law false arrest claim." *Id.*; *see also Gould v. Guerriero*, No. 24-12818, 2025 WL 1291659, at *5 (11th Cir. May 5, 2025) ("The existence of probable cause negates any inference of malicious intent or bad faith and constitutes an absolute bar to both state and § 1983 claims alleging false arrest.").

---

[8] Because a disputed fact remains as to whether the Deputies used excessive force off-camera, the failure to intervene claim survives as to the disputed force.

Because the Deputies had probable cause to arrest Plaintiff, the Court awards them summary judgment on this claim. And given Sheriff Rambosk's liability is derivative of the Deputies' liability, he is entitled to summary judgment on this claim as well. *See Hernandez v. Sosa*, No. 11-21479-CIV, 2012 WL 4148890, at \*7 (S.D. Fla. July 9, 2012) ("Under Florida law, where an agent or employee is found to have no liability, then a judgment cannot stand against the principal or employer on the basis of vicarious liability or respondeat superior." (citation and quotations omitted)).

### B.    False Imprisonment (count II)

Similarly, Plaintiff brings a false imprisonment claim against the Deputies and vicariously against Sheriff Rambosk. "Under Florida law, false arrest and false imprisonment are simply two names for the same tort." *Lopez*, 788 F. Supp. 3d at 1250. As with a false arrest claim, probable cause is a complete bar to an action for false imprisonment. *See Bolanos v. Metro. Dade Cnty.*, 677 So. 2d 1005, 1005 (Fla. Dist. Ct. App. 1996) ("[P]robable cause is a complete bar to an action for false arrest and false imprisonment[.]"). For the same reasons discussed above, the Court grants summary judgment in favor of Defendants on count II.

### C.    Battery and Assault (counts V and VI)

Plaintiff also brings state assault and battery claims against the Deputies and vicariously against Sheriff Rambosk. "A battery claim for

20

excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Pinto*, 2022 WL 2289171, at *7 (citing *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996)). "We apply a presumption of good faith to law enforcement conduct, holding officers liable only where the force used is 'clearly excessive.'" *Id.* (quoting *Sanders*, 672 So. 2d at 47).

Given the Deputies' use of force was de minimis and otherwise reasonable under the circumstances, it was not "clearly excessive" for purposes of Plaintiff's Florida battery and assault claims. So those claims fail. *See id.*; *Lopez*, 788 F. Supp. 3d at 1248 n.16 ("[E]xcessive force claims under Florida law and section 1983 often rise and fall together." (citation omitted)). The Court grants partial summary judgment in favor of Defendants on counts V and VI.[9]

Accordingly, it is now

**ORDERED:**

1. The Deputies' construed Motion for Partial Summary Judgment (Doc. 92) is **GRANTED.**

2. Sheriff Rambosk's construed Motion for Partial Summary Judgment (Doc. 93) is **GRANTED**.

---

[9] As with the excessive force claim, the assault and battery claims survive as to the disputed force allegedly applied off-camera.

3.  The Court refers this case to a settlement conference with United States Magistrate Judge Nicholas P. Mizell.

**DONE** and **ORDERED** in Fort Myers, Florida this March 2, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record